UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DOLORES MORALES SANTIAGO,

               Plaintiff,

v.                                        6:10-CV-1510
                                            (GTS)
CAROLYN W. COLVIN,
Commissioner of Social Security,

               Defendant.
_____

APPEARANCES:                             OF COUNSEL:

EMPIRE JUSTICE CENTER            LOUISE MARIE TARANTINO, ESQ.
  Counsel for Plaintiff
119 Washington Avenue
2nd Floor
Albany, NY 12210

U.S. SOCIAL SECURITY ADMIN.      BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Dolores Morales Santiago ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 14.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on November 8, 1960. Plaintiff has a high school education and an associate degree in secretarial work that she received in Puerto Rico. Plaintiff has worked in sewing. Generally, Plaintiff's alleged disability consists of degenerative disc disease of the lumbar spine, carpal tunnel syndrome, arthritis of the hands and wrists, osteoarthritis of the knees, depression, and anxiety. Plaintiff's alleged disability onset date is December 23, 2006.

### B. Procedural History

On January 31, 2007, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income. Plaintiff's application was denied on May 24, 2007, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On March 12, 2009, Plaintiff appeared in a hearing before the ALJ, Michelle S. Marcus. (T. 39-83.) On May 17, 2009, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 6-20.) On October 15, 2010, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.)

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 9-16.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2011, and has not engaged in substantial gainful activity since December 23, 2006, the alleged onset date. (T. 11.) Second, the ALJ found that Plaintiff's osteoarthritis in the knees, degenerative disc disease in the lumbar spine, carpal tunnel syndrome, and arthritis in the hands and wrists are severe impairments, but that Plaintiff's depression and anxiety disorder are not severe impairments. (T. 11-12.) Third, the ALJ found that Plaintiff's

2

severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 12.) The ALJ considered Listing 1.01. (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work and use her hands for frequent fine manipulation, but could not perform repetitive forceful movement of the left hand. (T. 12-14.) Fifth, the ALJ found that Plaintiff is unable to perform her past relevant work in sewing. (T. 14-15.) Sixth, and finally, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 15.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes three arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in assessing the medical evidence of record in formulating the RFC. (Dkt. No. 12, at 13-16 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the RFC is not supported by substantial evidence. (*Id.* at 16-23.) Within this argument, Plaintiff argues that (1) Plaintiff cannot perform the full range of sedentary work, and (2) the ALJ failed to consider Plaintiff's mental impairments in formulating the RFC. (*Id.*) Third, Plaintiff argues that the ALJ erred at step five of the sequential analysis by applying the Grids rules, or by applying the wrong Grids rule. (*Id.* at 22-25.)

Defendant makes four arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly determined that Plaintiff's depression and anxiety are not severe impairments. (Dkt. No. 14, at 5-7 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ's RFC determination is supported by substantial evidence. (*Id.* at 7-10.) Third, Defendant argues that the ALJ properly evaluated Dr. Pizarro's opinion. (*Id.* at 10-13.) Fourth, and finally, Defendant argues that the ALJ's step five determination is supported by substantial evidence. (*Id.* at 13-16.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

5

### III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A. Whether the ALJ Erred in Determining that Plaintiff's Depression and Anxiety Are Not Severe Impairments

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 5-7 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," with examples including the following: (1) physical functions such as walking, standing, lifting, pushing, pulling, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Accordingly, the severity of an impairment is determined by the limitations imposed by the impairment, and not merely by diagnosis of the impairment. *Ellis v. Comm'r,* 11-CV-1205, 2012 WL 5464632, at *4 (N.D.N.Y. Sept. 7, 2012); *McConnell v. Astrue,* 03-CV-0521, 2008 WL 833968 (N.D.N.Y. Mar. 27, 2008).

"The second step requirement under the prescribed disability analysis is truly *de minimis*, and intended only to screen out the truly weakest of cases." *Davis v. Colvin*, 11-CV-0658, 2013

WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 [2d Cir. 1995]). When an ALJ finds that one or more of a plaintiff's impairments are severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the five-step analysis and did not deny the claim based on lack of a severe impairment alone. *Ellis,* 2012 WL 5464632, at *5; *Tyron v. Astrue*, 10-CV-0537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012).

The ALJ noted that Plaintiff was treated by psychiatric social worker, Sara Boerenko, L.S.M.W., in July and August of 2008. (T. 12.) The ALJ noted that Ms. Boerenko observed that Plaintiff was neat and well-groomed, with normal affect and mood, good eye contact, and a cooperative attitude. (*Id.*) The ALJ noted that Ms. Boerenko indicated that Plaintiff's depressive symptoms involved issues with raising her grandchildren, unwinding from her daily activities, and dealing with frustration. (*Id.*) The ALJ further noted that Plaintiff's depressive symptoms improved after just one therapy session with Ms. Boerenko. (*Id.*)

The ALJ noted that Plaintiff did not list a mental impairment among the conditions limiting her ability to work. (*Id.*) Additionally, Plaintiff's functional report indicated that she "sometimes forgets things," but that she did not have problems paying attention, could finish what she starts, could follow spoken and written instructions, and did not have problems getting along with bosses, teachers, police, landlords, or other people in authority, and had never lost a job because of problems getting along with people. (T. 171.) "Work-related mental activities generally required by competitive, remunerative work include the abilities to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996). Here, the ALJ determined

7

that "there is simply nothing in the record to support a finding that the claimant's mental impairments cause even a minimal limitation in her ability to perform regular work." (T. 12.)

Further, the ALJ found that Plaintiff's osteoarthritis in the knees, degenerative disc disease of the lumbar spine, carpal tunnel syndrome, and arthritis in the hands and wrists are severe impairments, and therefore the ALJ did not deny benefits based on lack of a severe impairment. (T. 11.) Rather, the ALJ continued the five-step sequential analysis and properly noted that her RFC assessment must consider "all of the claimant's impairments, including impairments that are not severe." (T. 10.) Accordingly, even if the ALJ's failure to find additional impairments severe at step two of the sequential analysis is error, it is harmless. *Ellis*, 2012 WL 5464632, at *5; *Tyron,* 2012 WL 398952, at *3.

Therefore, remand is not necessary on this basis.

### B. Whether the ALJ's Assessment of Dr. Pizarro's Opinion was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 10-13 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given to the opinion of a treating physician, or when assessing other medical opinions, the ALJ should

consider the following factors to determine the proper weight: (1) the frequency of the examinations and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

On January 9, 2009, treating physician, Glenn Pizarro, M.D., opined that Plaintiff could sit for three hours, stand for two hours, walk for one hour, and occasionally lift or carry less than ten pounds during an eight-hour workday. (T. 327.) Dr. Pizarro opined that Plaintiff could perform frequent fine manipulating, and occasional simple grasping, reaching, pushing/pulling and using foot pedals. (*Id.*) Dr. Pizarro opined that Plaintiff could never kneel, crawl, or reach above shoulder level during an eight-hour workday, and could never work around heights, moving machinery, temperatures, chemicals, odors, fumes/gases, humidity, or vibrations. (T. 328.)

The ALJ afforded great weight to Dr. Pizarro's opinion regarding Plaintiff's hand limitations, reasoning that the limitations are well supported by the evidentiary record as a whole. (T. 14.) However, the ALJ declined to grant great weight to Dr. Pizarro's opinion regarding Plaintiff's limitations in lifting, standing, sitting, and walking. (*Id.*) The ALJ reasoned that Dr. Pizarro is not a neurologist or orthopedic specialist, and that these limitations are not supported his own treatment notes or the medical record as a whole. (T. 13.) The ALJ noted that Dr. Pizarro frequently made positive observations of Plaintiff's condition upon examination. (*Id.*) The ALJ cited Dr. Pizarro's treatment notes observing that Plaintiff appeared to be healthy and well developed, exhibited good posture, walked with a normal gait, and that inspection and palpation of the upper and lower extremities yielded normal results. (*Id.*)

9

The ALJ also cited other substantial evidence that was inconsistent with the extreme limitations opined by Dr. Pizarro in lifting, standing, sitting, and walking. (T. 14.) The ALJ noted that medical evidence of record regarding Plaintiff's back impairment is inconsistent with a disabling degree of limitation, and that objective medical test results in the record are generally mild. (T. 13.) The ALJ noted that a bone densitometry performed in March 2007 showed minimal osteopenia in the lumbar spine with slightly increased risk of developing spinal compression fractures. (*Id.*) The ALJ noted that an x-ray of Plaintiff's lumbar spine in April 2007 showed minimal narrowing of the L4-L5 disc space with disc space otherwise maintained. (*Id.*) The ALJ further noted that an MRI of Plaintiff's lumbar spine in January 2009 revealed slight bulges, but did not show any specific nerve root impingement. (*Id.*)

The ALJ noted that, on April 18, 2007, consultative examiner William Rogers, M.D., observed that Plaintiff walked with a normal, symmetrical gait, and observed that Plaintiff had a full range of motion in both knees with stability in all directions. (T. 14.) Dr. Rogers further observed that Plaintiff got on and off the examination table without difficulty, and had full ranges of motion of the cervical spine and all joints of the upper and lower extremities. (T. 293.) Additionally, the ALJ noted that examining nurse practitioner, Daniel Cleary, F.N.P., observed that Plaintiff had good ranges of motion, reflexes, and strength in the back and upper extremities, with no pain to palpation of the cervical, thoracic, or lumbar spine. (T. 14.) The ALJ noted that Mr. Cleary observed that Plaintiff had full grip strength, extension, and flexion in her wrists, and had a full range of motion without pain or instability in her knees. (*Id.*)

The Court finds that the ALJ properly applied the regulatory factors in evaluating Dr. Pizarro's opinion. The ALJ considered Dr. Pizarro's professional credentials, treating relationship with Plaintiff, treatment notes, and the consistency of his opinion with other

substantial evidence in the record pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c). Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where a plaintiff challenged the ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Accordingly, the ALJ's assessment of Dr. Pizarro's opinion was supported by substantial evidence. However, because this matter is being remanded for the reasons discussed below in Part III.C. of this Decision and Order, the ALJ is not precluded from reassessing Dr. Pizarro's opinion in light of any additional evidence obtained on remand.

### C. Whether the ALJ's RFC Determination Was Supported By Substantial Evidence

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's's memorandum of law. (Dkt. No. 12, at 16-19 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The ALJ has an affirmative duty to develop a claimant's complete medical history. 20 C.F.R. §§ 404.1512(d), 416.912(d); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). By statute, an ALJ is required to develop a claimant's complete medical history for at least twelve months before an application for benefits was filed, and for a longer period when there is reason to believe that additional information is necessary to reach a decision. *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998). This duty exists even when a claimant is represented by counsel, due to the non-adversarial nature of a benefits proceeding. *DeChirico,*

134 F.3d at 1184; *Lamay*, 562 F.3d at 509. Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520b(c)(1)-(4), 416.920b(c)(1)-(4); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The ALJ determined that Plaintiff had the RFC to perform sedentary work and could use her hands for frequent fine manipulation, but could not perform repetitive forceful movement of the left hand. (T. 12-14.) The Court finds that the manipulative limitations included in the ALJ's RFC are supported by substantial evidence, specifically (1) Dr. Pizarro's opinion of

12

Plaintiff's hand limitations discussed above in Part III.B. of this Decision and Order, and (2) consultative examiner Dr. Roger's opinion that Plaintiff would be restricted from performing repetitive forceful movement of the left hand. (T. 294.)

However, the ALJ's determination that Plaintiff could perform the additional physical requirements of sedentary work was not supported by substantial evidence. Sedentary work requires the abilities to sit for six hours, stand and walk for two hours, and lift or carry up to ten pounds in an eight-hour workday. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 83-10, 1983 WL 31251 (1983). Here, the record does not contain a broad assessment of Plaintiff's physical functional abilities and limitations from an acceptable medical source.

"The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *accord, Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999). Moreover, an ALJ cannot assess a plaintiff's RFC based on the ALJ's own interpretation of the medical evidence. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (holding that an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion"). The Court recognizes that, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *House v. Astrue*, 11-CV-915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013. (internal citation and quotation marks omitted). However, here, the ALJ determined that Plaintiff had multiple severe physical impairments, specifically, osteoarthritis in the knees, degenerative disc disease in the lumbar spine, carpal tunnel syndrome, and arthritis in the hands and wrists. (T. 11.)

Accordingly, the ALJ's finding that Plaintiff could perform sedentary work was not supported by substantial evidence, because the record was insufficient to support such an RFC. *See Larkin v. Colvin,* 13-CV-0567, 2014 WL 4146262, at *9 (N.D.N.Y. Aug. 19, 2014) (holding that remand was required where the record lacked a broad assessment of Plaintiff's physical functional limitations from an acceptable medical source); *House*, 2013 WL 422058 at *4 (holding that remand was required where there was no medical source opinion supporting the ALJ's RFC determination).

Therefore, remand is required for the ALJ to obtain a broad assessment of Plaintiff's physical functional abilities and limitations from an acceptable medical source. Accordingly, on remand, the ALJ should determine Plaintiff's physical RFC based on a fully developed record.

### D. Whether the ALJ's Step Five Determination Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 13-16 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step five of the sequential process, the burden shifts to the Commissioner to establish that there are other jobs that exist in significant numbers in the national economy that a plaintiff can perform based on the plaintiff's RFC, age, education, and past relevant work. *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004). The Commissioner can usually establish that there is other work that a plaintiff can perform by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009).

When a plaintiff suffers from nonexertional limitations that significantly limit the plaintiff's employment opportunities, exclusive reliance on the Grids is inappropriate. *Baldwin*,

2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]). However, "the mere existence of a non-exertional limitation does not automatically preclude reliance on the guidelines." *Zabala v. Astrue,* 595 F.3d 402, 410-11 (2d Cir. 2010) (citing *Bapp,* 802 F.2d at 603.) A plaintiff's range of potential employment is significantly limited when the plaintiff "suffers from the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Baldwin*, 2009 WL 4931363, at *27.

Here, the ALJ did not obtain the opinion of a vocational expert in determining whether there are jobs in the national economy that Plaintiff can perform. Instead, the ALJ determined that there are jobs in the national economy that Plaintiff can perform by relying solely on the Medical-Vocational guidelines. (T. 15-16.) The ALJ noted that, although Plaintiff used an interpreter at the hearing, Plaintiff testified that she can read a newspaper, write, and express herself verbally to some degree in English. (*Id.*) Accordingly, the ALJ determined that Plaintiff could communicate in English within the meaning of the Code. (*Id.*) Additionally, the ALJ determined that Plaintiff's manipulative limitations would have little or no effect on the occupational base of unskilled sedentary work. (T. 15.)

For the reasons discussed in Part III.C. of this Decision and Order, this matter is being remanded for the ALJ to obtain additional medical evidence. Accordingly, remand is also required for the ALJ to reassess her decision at step five in light of any new medical evidence obtained. Upon remand, the ALJ must also reevaluate whether the range of work that Plaintiff can perform based on her additional limitations is "so significantly diminished as to require the introduction of vocational testimony." *Bapp*, 802 F.2d at 606.

15

ACCORDINGLY, it is

ORDERED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

ORDERED that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

ORDERED that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: March 14, 2016
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge